ELIZABETH TINDELL, Individually and on Behalf of All Others Similarly Situated, Respondent, v EDWARD I. KOCH, as Mayor of the City of New York, et al., Appellants.

First Department, January 29, 1991

## APPEARANCES OF COUNSEL

*Deborah Douglas* of counsel *(Fay Leoussis* with her on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for appellants.

*Lynn M. Kelly* of counsel *(Jane E. Booth, Douglas E. Hoffman* and *Diane Lutwak* with her on the brief; *The Legal Aid Society,* attorneys), for plaintiff.

## OPINION OF THE COURT

Ross, J. P.

The sole issue on this appeal is, whether the IAS court abused its discretion when it granted the plaintiff's motion for certification of this action as a class action with the plaintiff class generally defined as: "[a]ll senior citizens residing in rent stabilized apartments within the City of New York who presently are eligible, or in the future will be eligible to receive a Senior Citizen Rent Increase Exemption (SCRIE) and who because they applied, or will apply, for benefits after the date they first met the SCRIE eligibility criteria receive, or will receive, a smaller SCRIE benefit than they would have received if their SCRIE application had been filed on the date they first met the SCRIE eligibility criteria"; and specifically defined as: "(a) persons who have not applied or will not apply for SCRIE benefits as soon as they first meet the eligibility criteria because of the City of New York's failure to publicize the SCRIE program; and (b) persons who have not applied or will not apply for SCRIE benefits as soon as they first meet the eligibility criteria for any other reason".

Section 26-509 of the Administrative Code of the City of New York sets out the standards for entitlement to rent increase exemptions and the equivalent tax abatements for rent-regulated property occupied by certain senior citizens. Generally, the scheme provides protection from rent increases to low-income elderly tenants by freezing their rents at certain levels and giving their landlords a dollar-for-dollar credit against the real estate taxes due on the property in which the apartment is located. The specific standard that is relevant with respect to this action requires that the head of household be 62 years of age or older, and that the household rent

exceed one third of the household's aggregate disposable income. In the event that an elderly tenant meets this criteria and is entitled to the exemption, the Department of Housing Preservation and Development issues an exemption order which takes effect on the first day of the first month after receipt of the application and, thereafter the landlord may not collect from that tenant, rent in excess of either one third of the household's aggregate disposable income, or the rent in effect immediately preceding the eligibility date, whichever is greater (Administrative Code of City of New York § 26-509 [b]).

Plaintiff Elizabeth Tindell became 62 years old in 1980. In May 1982 she moved into an apartment at 215 West 116th Street in Manhattan, pursuant to a two-year rent-stabilized lease. At that time her rent was $240 per month. From mid-1983 to the present the plaintiff's income has been limited to the minimum amount of Social Security Income benefits and increased accordingly, as follows; $375 per month in 1984; $386 per month in 1985; $408 per month in 1986; $412 per month in 1987; and $426 per month in 1988. In May 1984 her rent due for the forthcoming two-year lease period of May 1984 through April 1986 was increased to $257 per month. This increase made the plaintiff eligible for an exemption under the SCRIE standards as her monthly rent in May 1984 far exceeded one third of her aggregate disposable income, and, in fact, amounted to approximately 70% thereof. In May 1986, the plaintiff's rent for the ensuing two-year period of May 1986 to April 1988 was increased to $288 per month, again amounting to approximately 70% of the plaintiff's aggregate disposable income.

On July 2, 1987 plaintiff filed for a Senior Citizens Rent Increase Exemption and claimed eligibility from 1984. By letter dated October 8, 1987, the Department of Housing Preservation and Development (HPD) determined that the plaintiff's rent exemption would be effective August 1, 1987, and stated that she would not have to pay the increase she received on December 1, 1986. However, pursuant to the plaintiff's lease terms, increases were to be effective May 1984 and May 1986 (the commencement dates of each renewal lease). Accordingly, it is unclear from the record whether the initial HPD determination froze the plaintiff's rent at the 1984-1986 level of $257 per month or at the 1986-1988 level of $288 per month. In any event, the plaintiff filed an administrative protest in connection with which an administrative hearing was held on April 27, 1988. According to the usual

practice of the HPD the plaintiff's landlord was not informed of the proceedings and thus did not participate in them.

Pursuant to three combined Senior Citizen Rent Increase Exemption orders and tax abatement certificates, all dated July 19, 1988, plaintiff was granted a $31.69 per month exemption for the period May 1, 1986 through April 30, 1988 which effectively froze her rent at $257 per month. The orders contained no statement of the basis for the determination and clearly did not give plaintiff the relief relating back to 1984 which she originally sought. Consequently, in September 1988 plaintiff commenced this action as a combined CPLR article 78 proceeding, and class action in which she challenged the HPD's failure to grant her an exemption relating back to 1984 —(the time plaintiff contends she first became eligible for the exemption), and sought certain declaratory and injunctive relief. Specifically the relief sought included, *inter alia:* article 78 relief in the form of an annulment of those parts of the July 19, 1988 HPD administrative orders which failed to give plaintiff an exemption based on the date of her eligibility in 1984; a declaration that the policy of basing the amount of the rent exemption upon the rent in effect on the date of the applicant's application rather than on the rent in effect on the applicant's eligibility date is contrary to law; a declaration that the defendant's failure to undertake appropriate outreach and assistance to inform senior citizens eligible for the SCRIE program of its existence was also contrary to law; injunctive relief enjoining the defendants from calculating the exemptions based on the rent in effect on the date of an applicant's application and directing them to calculate the exemption based on the applicant's date of eligibility; injunctive relief directing the defendants to publicize the program and conduct appropriate outreach to senior citizens.

By notice of motion dated January 31, 1989, plaintiff moved for class action certification with respect to the third and fourth causes of action of the complaint in which the declaratory and injunctive relief was sought.[1] It was argued that the defendant's failure to properly publicize the SCRIE program and their practice of fixing the eligibility date for the exemption based on the date of the application affected a large but defined population of senior citizens. Plaintiff referred to a 1987 report by City Council President Andrew Stein's office

1. The first and second causes of action of the complaint sought CPLR article 78 relief in connection with plaintiff Tindell's individual application.

and to a 1987 housing vacancy report for New York City in which the number of senior citizens who where eligible, but who had not applied for the exemption, was estimated in each report at approximately 21,000 and 60,000, respectively. Thus, based on these facts, and the contentions that plaintiff's claims were typical of the class and that plaintiff had no interests that conflicted with those of the other members of the class, plaintiff argued that various criteria for class action certification of CPLR 901 (a) were satisfied.

Defendant's opposed and argued: (1) that plaintiff's claims were not typical and that she was not a proper representative of the class because her claim was likely barred by the 60-day Statute of Limitations applicable to CPLR article 78 challenges; (2) that the doctrine of stare decisis would be an applicable and better means to adjudicate the rights of the other members of the proposed class; and (3) that the class actually consisted of two subclasses whose interests differed from each other so that certification of each had to be considered separately, namely, (a) present and future recipients who had applied or would apply after they were first eligible because of the lack of publicity of the SCRIE program, and (b) present and future recipients who had or would have their exemption improperly calculated.[2] Defendants also cross-moved to dismiss the action pursuant to CPLR 3211 (a) (10) for failure to join, as necessary parties, the landlords affected by senior citizen rent exemptions.

CPLR 901 lists five requirements which are prerequisite for certification of a class action: (1) that the class is so numerous that joinder of all of the members is impracticable; (2) that there are common questions of law or fact which predominate over any questions affecting only individual members; (3) that the claims or defenses of the representative parties are typical of those of the class; (4) that the representative parties will adequately protect the interests of the class; and (5) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Defendant's objections to certification focus on requirements numbered two, three and five, it being clear that plaintiff's claims satisfy

---

**2.** Defendant's description of this second subclass (subclass b), which appears in their motion papers filed in the IAS court, paraphrases that court's definition of the subclass. As noted, *supra,* the second subclass was defined by the IAS court as "persons who have not applied or will not apply for SCRIE benefits as soon as they first meet the eligibility criteria for any other reason".

requirements one (numerosity) and four (that plaintiff's interests do not conflict with those of the class).

■ It is a fact that a judgment favorable to the plaintiff herein will bind the governmental body (HPD) with respect to all persons similarly situated by virtue of the doctrine of stare decisis and, that such a procedural course may be preferable in certain situations where governmental operations are involved. *(See, Matter of Jones v Berman,* 37 NY2d 42, 57.) However, in this case the members of the proposed class are, as is the named plaintiff, indigent elderly individuals for whom the commencement of individual actions to obtain the small monthly benefits that might result from this action would be "oppressively burdensome" *(compare, Matter of Lamboy v Gross,* 126 AD2d 265, 274). Contrary to the defendants' view, this action is comparable to *Matter of Lamboy v Gross (supra)* in that typically, eligible elderly people who have not received any exemption or have not received their full exemption often must forego necessities to meet rent payments. Thus, their need for relief is as immediate as that of the plaintiff homeless families in *Matter of Lamboy v Gross (supra).* Even if a significant number of the members of the proposed class were to obtain free legal representation in connection with their claims, the multiplicity of lawsuits would give rise to the possibility of inconsistent rulings by various courts in the State. Proper class action certification would eliminate that possibility.

While HPD offers to make appropriate retroactive calculations and payments to certain members of the proposed class if plaintiff herein is successful, that offer fails to adequately consider those thousands of individuals who would qualify as members of the proposed class and who have already been affected by the current practice of calculating the exemption based on the date of the application, as opposed to the date of first eligibility.

■ Litigation of the third cause of action, which deals with the defendants' method of calculating the amount of the exemption, as a class action is therefore the superior procedural course. However, insofar as the fourth cause of action, which alleges the defendants' failure to adequately reach out to the senior citizen community and publicize the program is concerned, there appears no need for class certification. A direction that the defendants adequately inform the senior citizen community of the SCRIE program and assist them in making their applications in an individual case, will have the

same effect as a similar direction in a class action as there will be no need for any action on the part of the members of the proposed class to obtain the benefit of the stare decisis effect of such a direction *(see, Matter of Rivera v Trimarco,* 36 NY2d 747, 749).[3]

In response to the plaintiff's attempt to seek class action certification as to both the fourth cause of action, concerning defendants' failure to publicize the SCRIE program, and the third cause of action, concerning the defendant's practice of calculating the exemption based on the applicant's application date as opposed to the date of first eligibility, the IAS court created two subclasses within the proposed class. One class consists of those who did not or will not apply because of the failure to publicize the SCRIE program, and the other consists of those who did not or will not apply for any other reason. This scheme raises significant difficulties with respect to the management of the action as a class action, the most notable of which is that the two-subclass structure causes a predominance of individual factual issues over common issues contrary to the requirement of CPLR 901 (a) (2). Under the IAS court's two-subclass system the court will necessarily have to determine with respect to each member, (a) whether or not the individual knew of the program; (b) if the individual was not aware of the program whether or not that lack of knowledge was the result of defendant's failure to publicize the program; and (c) whether the individual would have applied upon first eligibility. The proposed class will receive complete relief, and the above described management problems will be eliminated by doing away with the subclasses and limiting class action certification to the third cause of action concerning the method of calculation of the exemption.

While the defendants, on this appeal, do not strongly press their contention that the plaintiff's claim was not typical and that she was not a proper representative of the class because her claim was time barred by the 60-day Statute of Limitations set out in Administrative Code of City of New York § 26-516, we note that the IAS court properly rejected that contention. Administrative Code § 26-516 sets out the Statute of Limitations for the commencement of a proceeding seeking review pursuant to CPLR article 78. The claims with

---

**3.** HPD could solicit the cooperation of the public utilities to notify senior citizens so situated. The New York public utilities have shown themselves to be most cooperative in similar efforts to reach this group of citizens.

respect to which plaintiff seeks class action certification were for declaratory and injunctive relief and were directed generally at the SCRIE program and the defendants' administration of the program, as opposed to the determination of her individual application *(see, e.g., Bryant Ave. Tenants' Assn. v Koch,* 71 NY2d 856, 858). Therefore, the 60-day Statute of Limitations does not apply. Defendants raised no issue below, and raise no issue on appeal, concerning the timeliness of plaintiff's article 78 challenge to the HPD's determination of her application, as the motion for class certification was not made with respect to the article 78 claims in any event.

■ Finally, defendants' argument that the action should be dismissed for failure to join the landlords affected by the SCRIE program because they are necessary parties is meritless. CPLR 1001 (a) provides that necessary parties are, "[p]ersons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action". Defendants have failed to show that the landlords affected by SCRIE are necessary for complete relief to be provided to the parties and have not shown how such landlords will be inequitably affected by any judgment in this action. Defendants' argument appears somewhat disingenuous, in light of the fact that they do not join the landlords in their own administrative protest cases.

Accordingly, the order of Supreme Court, New York County (Eugene Nardelli, J.), entered September 27, 1989, is modified, on the law, the facts, and in the exercise of discretion, without costs, to grant plaintiff's motion for class certification only with respect to the third cause of action, the motion is otherwise denied, and the class is defined as follows:

All senior citizens residing in rent-stabilized apartments within the City of New York who presently are eligible, or in the future will be eligible, to receive a Senior Citizen Rent Increase Exemption (SCRIE) and who because they applied, or will apply, for benefits after the date they first met the SCRIE eligibility criteria, received, or will receive, a smaller SCRIE benefit than they would have received if their SCRIE application had been filed on the date they first met the SCRIE eligibility criteria; and the order is otherwise affirmed.

MILONAS, ROSENBERGER, ASCH and KASSAL, JJ., concur.

Order of Supreme Court, New York County, entered September 27, 1989, is modified, on the law, the facts, and in the

exercise of discretion, without costs, to grant plaintiff's motion for class certification only with respect to the third cause of action, the motion is otherwise denied, and the class is defined as follows:

All senior citizens residing in rent-stabilized apartments within the City of New York who presently are eligible, or in the future will be eligible, to receive a Senior Citizen Rent Increase Exemption (SCRIE) and who because they applied, or will apply, for benefits after the date they first met the SCRIE eligibility criteria, received, or will receive, a smaller SCRIE benefit than they would have received if their SCRIE application had been filed on the date they first met the SCRIE eligibility criteria; and the order is otherwise affirmed.